UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD KOLACKI,

    Petitioner,

    v.

WILLIAM DUNCAN, et. al.,

    Respondents.

                                  /

No. C 00-0251 MHP

**MEMORANDUM & ORDER**

**Re: Amended Petition for Writ of Habeas Corpus**

       Petitioner Richard Kolacki ("petitioner" or "Kolacki") is currently a prisoner at the California Men's Colony in San Luis Obispo, California. On January 21, 2000 Kolacki filed a petition for writ of habeas corpus pursuant to 28 U.S.C. section 2254 asking this court to 1) vacate petitioner's conviction and sentence, or in the alternative, 2) grant other relief as may be appropriate. The petition was stayed while Kolacki pursued further relief in state court. On February 17, 2005—after exhausting his state court remedies—the case was reopened in this court, and Kolacki filed an Amended Petition for Writ of Habeas Corpus. The court has considered the parties' submissions and arguments fully, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

       In February 1993 Kolacki drove William Russell Harley ("Harley") to Alviso, California, where Harley shot and killed Antone Amireh. Harley and Kolacki were arrested and tried together for the murder. The State's theory at trial was that Harley was the shooter and Kolacki was the

1  "wheel-man" who knew that Harley intended to commit a robbery as they drove to Alviso.

2  Before trial, Harley filed a motion in limine objecting to the introduction of three
3  tapes—tapes 9, 10, and 11—containing Kolacki's statements to the police. Harley argued that the
4  admission of Kolacki's taped statements violated his right to confrontation. Kolacki also challenged
5  the State's introduction of the three tapes at trial. The trial court ruled that because tapes 10 and 11
6  only used pronouns when referencing Harley, the two tapes could be introduced as this essentially
7  amounted to a redaction. Tape 9, on the other hand, specifically referenced Harley by name, and the
8  court ruled that it was therefore inadmissible. Based on this ruling, Kolacki moved to sever the
9  trials, arguing that the introduction of tapes 10 and 11, without tape 9 to explain the full context of
10 the statements, would prevent him from receiving a fair trial. The trial court, however, denied the
11 motion to sever.

12  A jury convicted Harley of numerous offenses, including first degree murder, assault with a
13 firearm, and assault with a deadly weapon. Harley was sentenced to life without parole. The jury
14 also found Kolacki guilty of first degree murder and second degree robbery under California's
15 felony-murder rule. Kolacki was sentenced to a prison term of twenty-five years to life for the
16 murder conviction. The trial court stayed the robbery conviction and the arming enhancement.

17  On July 15, 1993 the California Court of Appeal affirmed Kolacki's and Harley's
18 convictions. Harley argued that the trial court's admission of tapes 10 and 11 was in violation of his
19 right to confrontation. The appellate court agreed. The court also ruled, however, that the error was
20 harmless because the properly admitted evidence all supported the conclusion that Harley killed
21 Amireh.

22  Kolacki argued that the exclusion of tape 9 violated his rights to due process and a fair trial
23 because tape 9 was necessary for the jury to understand the balance of his statements in tapes 10
24 and 11. Because the appellate court held that the introduction of tapes 10 and 11 at trial was
25 improper, the court also determined that Kolacki's contention that tape 9 was excluded in violation
26 of his rights to due process and a fair trial was moot. The court reasoned that if tapes 10 and 11 had
27 been excluded, as they should have been, there was no context for tape 9 to explain. Kolacki also
28 argued that the admission of tape 9 was necessary for the jury to consider the voluntariness of the

statements on tapes 10 and 11. The court held that this issue was also moot as a result of the improper admission of tapes 10 and 11.

Kolacki finally contended that the trial court erred in denying his request to sever the trials. Kolacki asserted that the trial court's ruling on tape 9 made it impossible for him to have a fair trial, absent severance. The appellate court found that although the trial should have been severed—or at least heard by different juries—the error was harmless because Kolacki would not have obtained a more favorable result. The court found that the introduction of tape 9 would have harmed Kolacki as much, if not more, than its exclusion hurt him.

In October of 1998 the California Supreme Court denied Kolacki's direct appeal and he initiated habeas review in 2001 in the Superior Court of California. In his petition to the Superior Court, Kolacki contended that 1) new evidence proved his innocence; 2) the trial court improperly excluded evidence bearing on the credibility of Kolacki's confession; and 3) the trial court failed to exclude evidence obtained as a result of police coercion.

Kolacki argued that the testimony at sentencing of Harley and his lawyer, Craig Kennedy, showed that Kolacki was innocent. Kolacki argued that this new evidence purportedly undermined the State's case against him at trial, and therefore relief was justified. Kolacki also argued that the trial court improperly excluded tape 9 which provided competent evidence corroborating his defense and that this error was not harmless. Finally, Kolacki argued that the trial court's failure to exclude all three tapes—tapes 9, 10, and 11—deprived him of due process. Kolacki argued that these tapes should have all been excluded because the statements therein were involuntary and a product of police coercion. Kolacki argued that the statements were involuntary because Kolacki admitted—and the police officers acknowledged—on tape 9 that Kolacki was under the influence of drugs and alcohol. Kolacki also argued that his taped statements were coerced because the police officers promised him leniency and told Kolacki what he should confess to.

The Superior Court held an evidentiary hearing and on April 21, 2003 issued an order denying Kolacki's habeas petition. The Superior Court held that Kolacki's claim of innocence based on newly discovered evidence failed because Harley's penalty phase testimony revealed that Kolacki knew Harley was intending to collect a drug debt. Since the claimed debt was based on an

illegal transaction, the Superior Court held that Kolacki could not claim that he believed Harley was collecting a money debt. The Superior Court also held that all errors committed by the trial court and acknowledged by the appellate court were harmless beyond a reasonable doubt. The court stated that while tape 9 bore some indicia of coercion and implied promises of leniency, tape 9 revealed a classic paradigm of a police interview in which the suspect initially denies involvement, but later gradually elects to confess when confronted with the evidence against him. Additionally, the court noted that while tape 9 contained statements indicating that Kolacki may have been under the influence of drugs or alcohol at the time of the interview, Kolacki sounded sober and lucid throughout the entire interview. Finally, the court found that even if a jury had found the confession unreliable, Kolacki still knew that Harley was intending to collect a debt from an illegal transaction, as found by the appellate court.

The California Supreme Court denied Kolacki's petition for writ of habeas corpus on December 22, 2004 without further opinion. Subsequently, Kolacki's habeas petition, which was initially filed in this court on January 21, 2000, but which was held in abeyance while Kolacki pursued his state court remedies, was reopened. Kolacki filed an amended petition which is now fully briefed and ready for review by this court.

JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. section 2254. Venue is proper in either the district of confinement or the district of conviction and sentencing. 28 U.S.C. § 2241(d). Venue lies in this district because Kolacki was convicted and sentenced in Santa Clara County, which is the in the Northern District of California.

EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

4

federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in this petition.

LEGAL STANDARD

This court is required to analyze state habeas corpus claims under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that this court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Specifically, section 2254(d) applies to a habeas petition from a state prisoner challenging claims that have been adjudicated by a State court on the merits. The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim resulted in a decision that was: 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In this case, the last reasoned state court opinion is the April 21, 2003 order of the California Superior Court for the County of Santa Clara ("Superior Court") denying Kolacki's habeas petition. This court will apply the AEDPA standard to the Superior Court order to determine whether the court's decision to deny the petition was contrary to or an objectively unreasonable application of a clearly established federal law. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991) (a court "looks through" unexplained orders to the last reasoned decision).

DISCUSSION

Kolacki asserted three of his four claims before the Superior Court. The fourth claim regarding severance was decided by the state appellate court, but not reviewed by the Superior Court. Specifically, petitioner alleges 1) the jury never heard evidence which shows petitioner's actual innocence; 2) the trial court violated petitioner's due process rights by excluding tape 9; 3)

5

after excluding tape 9, the trial court violated petitioner's due process rights by refusing severance; and 4) the trial court violated petitioner's due process rights by refusing to exclude tapes 9, 10, and 11 as involuntary and a product of coercion.  Therefore the issue presented by this petition is whether the Superior Court's order, and the appellate court's order regarding the severance claim, denying Kolacki's claims was either contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court or based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  The court considers each argument in turn.

I.      Actual Innocence

Petitioner argues that newly discovered evidence proves that he is actually innocent because he did not know that Harley intended to commit murder, and therefore his conviction and sentence cannot stand under the felony-murder rule.  Kolacki lists the following new evidence as significant to this petition: 1) Harley's testimony at his own sentencing hearing; 2) the testimony of Harley's lawyer, Craig Kennedy, at the evidentiary hearing granted by the Superior Court; 3) the results of a polygraph examination taken by Kolacki; and 4) testimony from jurors who heard Harley's testimony at the penalty phase and found him credible.

The mere existence of new evidence relevant to the guilt of a state prisoner is not grounds for federal habeas relief.  Herrera v. Collins, 506 U.S. 390, 400 (1993).  In Herrera, the Supreme Court assumed without deciding that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."  Herrera, 506 U.S. at 417.  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  Herrera, 506 U.S. at 400.  The Supreme Court has declined to answer the question left open in Herrera; whether freestanding claims of actual innocence—claims in which the petitioner argues that the evidence sufficiently establishes his innocence, irrespective of any constitutional error at trial or sentencing—are possible.  See House v.

6

1  Bell, 547 U.S. 518, 554-55 (2006).

2      The Ninth Circuit has held that a capital habeas petitioner may assert a freestanding actual
3  innocence claim because a majority of the justices in Herrera would have supported such a claim.
4  See Carriger, 132 F.3d at 476.  The Ninth Circuit has also assumed without deciding that non-capital
5  defendants like Kolacki may also assert such claims under the standard set forth in Carriger.
6  See Osborne v. District Attorney's Office, 521 F.3d 1118, 1130-31 (2008).  The petitioner's burden
7  in such a case is "extraordinarily high" and requires a showing that is "truly persuasive."  See id.
8  (quoting Herrera, 506 U.S. at 417).  To be entitled to relief, the habeas petitioner asserting a
9  freestanding innocence claim must go beyond demonstrating doubt about his guilt and must
10 affirmatively prove that he is probably innocent.  See Carriger, 132 F.3d at 476; Jackson v.
11 Calderon, 211 F.3d 1148, 1165 (9th Cir. 2000).  Requiring affirmative proof of innocence is
12 appropriate, because when a petitioner makes a freestanding claim of innocence, he is claiming that
13 he is entitled to relief despite a constitutionally valid conviction.  See Carriger, 132 F.3d at 476.

### A. Harley's Testimony During Penalty Phase

Petitioner argues that Harley's testimony at his own sentencing hearing proves Kolacki's innocence.  The State's theory at trial was that Kolacki knew beforehand that Harley intended to commit a robbery.  During Harley's sentencing hearing, Harley testified to his role in the robbery and shooting.  Harley denied that Kolacki had knowledge that Harley intended to commit a robbery:

> Q.  What was your intention when you were going to Alviso?  What did you want to do?
>
> A.  Myself, I knew that I was going there to do a robbery of a store.  And Rick didn't know.  Richard Kolacki didn't know this at all.  He had no idea of it.

Reporter's Transcript of Proceedings, People v. Harley, No. 168927, at 3815 (Sup. Ct. April 23, 1996) (hereinafter, "RT Trial").  Harley gave consistent testimony throughout the sentencing phase, reiterating his belief that Kolacki knew nothing of his intentions to commit a robbery:

> Q.  Did you tell Rick what happened in the store?

7

> A. Yes, I told him I shot a guy, a man. And he said, no you didn't. He said, I don't want to hear that, and I just – he didn't know that it was – he didn't know that it was Tony because he didn't know I was robbing a store in the first place. He thought it was the guy I told him that owed me money.

Id. at 3819. On cross-examination, Harley again reiterated this point:

> Q. Be fair to say that Mr. Kolacki said you're not going to rob that store, he knew at that point your intentions were to rob a store?
>
> A. No, he didn't know. He did not know my intentions to rob a store.

Id. at 3828.

Petitioner argues that this testimony shows that Kolacki did not know that Harley intended to commit a robbery. Petitioner contends that Harley had every reason to minimize his own involvement in the crime during this phase of the trial, so as to minimize his sentence. Petitioner asserts that the fact that Harley decided to "come clean" during his sentencing is evidence that he was telling the truth. Respondent argues that this testimony falls substantially short of the standard required for petitioner to affirmatively show that he is probably innocent. Respondent also asserts that Harley's history of lying and unfailing contradictions cannot be ignored.

A petitioner purporting to assert a freestanding claim of actual innocence must affirmatively prove that he is probably innocent, Jackson, 211 F.3d at 1165, and such a showing must bear on the constitutionality of petitioner's conviction, Herrera, 506 U.S. at 400. This claim was reviewed by both the appellate court on direct appeal and the Superior Court in petitioner's state court habeas petition. The trial court had denied Kolacki a new trial based on this new evidence. The appellate court affirmed that decision, finding that Harley's testimony was not newly discovered evidence because Harley was not unavailable as a witness—at no point during the guilt phase of the trial did Harley assert his privilege against self-incrimination. The Superior Court denied Kolacki's habeas petition because Harley's sentencing testimony revealed that Kolacki knew Harley was intending to collect a drug debt. Although this was not the primary theory that the prosecution relied on at trial, the Superior Court ruled that Kolacki had no claim to a defense of a good faith belief that Harley was collecting a money debt.

Pursuant to AEDPA, Kolacki's petition may not be granted unless the Superior Court's decision was either "contrary to, or involved an unreasonable application of, clearly established

8

1 Federal law, as determined by the Supreme Court of the United States," or "based on an
2 unreasonable determination of the facts in light of the evidence presented in the State court
3 proceeding." 28 U.S.C. § 2254(d). Neither is the case here. Alone, Harley's sentencing testimony
4 falls short of the standard set forth in <u>Jackson</u> and <u>Herrera</u> for purported claims of actual innocence.

5     First, Harley's testimony is not exculpatory. Harley's testimony indicates that petitioner did
6 not know that Harley intended to rob a store. However, as noted by the Superior Court, Harley's
7 testimony also indicates that petitioner did know that Harley intended to collect a drug debt.
8 Kolacki also knew that Harley had, and intended to make use of, Kolacki's gun. This is hardly an
9 innocent transaction, and as noted by the Superior Court, such a debt would not be a defense to the
10 mens rea requirement. As noted by respondent, Kolacki cannot argue that his conviction is being
11 upheld based on a theory not presented at trial. Kolacki is attempting to assert a freestanding claim
12 of actual innocence, and in order to rise to the level of a constitutional violation, the burden of
13 proving such a claim lies with Kolacki. By asserting that he is being held based on a theory not
14 presented at trial, Kolacki seeks to shift his burden to the respondents.

15     Second, and exclusive of Kolacki's knowledge, Harley has a history of lying and
16 contradicting himself. As discussed in the following section I(B), <u>supra</u>, Harley's trial attorney,
17 Craig Kennedy testified at the Superior Court's evidentiary hearing that Harley's story regarding the
18 shooting in Alviso went through a number of iterations. At one point, Harley told Kennedy that he
19 did not know anything about the shooting. At another point, he told Kennedy that Kolacki was the
20 shooter. Finally, at his sentencing hearing, Harley admitted to committing the murder and claimed
21 Kolacki was unaware that Harley intended to commit a robbery of the store. Yet, he had previously
22 asserted that Kolacki may have been the shooter. In sum, the Superior Court's finding that Harley's
23 testimony at the evidentiary hearing was not a basis for relief was not contrary to clearly established
24 federal law, nor was it based on an unreasonable determination of the facts in light of the evidence
25 presented in the state court proceeding.

27     B.    <u>Kennedy's Testimony at Evidentiary Hearing Granted by Superior Court</u>

9

Petitioner next asserts that Craig Kennedy's testimony at the evidentiary hearing granted by the Superior Court proves that Kolacki is innocent. On March 17, 2003 Craig Kennedy testified on behalf of Kolacki at the evidentiary hearing regarding Kolacki's habeas petition. Kennedy was the public defender who represented Harley at trial. Because Harley waived his attorney-client privilege, Kennedy was able to testify regarding conversations he had with Harley prior to and during trial. Kennedy testified that, at one point, Harley indicated that Kolacki was unaware of Harley's intent to commit a robbery:

> Q. At some point in time did Mr. Harley admit that Mr. Kolacki did not know that Mr. Harley was going to commit a robbery?
>
> A. He did.

Reporter's Transcript of Proceedings, In re Kolacki, Habeas Corpus, No. 168927, at 8–9 (Sup. Ct. March 17, 2003) (hereinafter "RT Habeas").

> Q. Now, during the course of Mr. Harley's testimony at the penalty phase, did he testify essentially [sic] take responsibility for the crimes, exonerating or clearing Mr. Kolacki in involvement in the crimes?
>
> A. Yes.

Id. at 11. On cross-examination, Kennedy reiterated this statement:

> Q. And in your way of thinking when he [Harley] testified at the penalty phase he was what, finally admitting his involvement in the robbery?
>
> A. No. What he testified to at the penalty phase was a very consistent theme that he actually had presented to me in interviews many times in terms of his involvement, of Mr. Kolacki's lack of involvement.

Id. at 16. However, on cross-examination Kennedy testified that Harley had equivocated this statement in a number of ways prior to trial:

> Q. And in those two versions [of the story initially told] by Mr. Harley what did he say – how did the shooting happen?
>
> A. I think one of his versions at one time was he didn't know anything about anything period. Another version was that and I think was more of throwing things out that Mr. Kolacki was the shooter because he doesn't know any type of thing. I recall that as that being at the very early stages of the case.
>
> Q. Okay. So one of Mr. Harley's first stories to you is actually that Mr. Kolacki is probably the shooter?

10

1        A.     I think.  And once again I'm basing that on my recollection.  That first is I don't know anything.

Id. at 17–18.

Petitioner argues that this testimony confirms that in confidential communications Harley consistently told Kennedy that Kolacki knew nothing of Harley's intent to rob.  Yet, Kennedy's testimony fails to prove any such consistency.  In fact, Kennedy's testimony serves to diminish Harley's credibility because Kennedy points out that Harley did not tell a consistent story.  Alone, or in conjunction with Harley's sentencing hearing testimony, this new evidence is not a basis for relief.

      C.     <u>Polygraph Examination</u>

Petitioner provides the court with polygraph evidence that purportedly shows that Kolacki was unaware that Harley intended to rob the store.  The polygraph evidence was not presented to the Superior Court at either trial or on habeas review.  Petitioner, however, was not required to submit this evidence to the Superior Court for review because it is not a necessary factual predicate to his claims which were properly presented to the state court.  The doctrine of exhaustion "does not require that a habeas petitioner . . . present to the state courts every piece of evidence supporting his federal claims in order to satisfy the exhaustion requirement." <u>Davis v. Silva</u>, 511 F.3d 1005, 1009 (9th Cir. 2008) (citations omitted). Exhaustion does require that the petitioner "provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'"  <u>Id.</u>

Whether polygraph evidence is probative of and relevant to demonstrate Kolacki's veracity is questionable.  <u>See</u> <u>Cooper v. Brown</u>, 510 F.3d 870, 945 (9th Cir. 2007) (citing various cases upholding district court's exclusion of polygraph evidence).  Accordingly, the polygraph evidence taken alone or in conjunction with the other evidence offered by Kolacki to show his actual innocence does not meet the "extraordinarily high" standard required under <u>Carriger</u>.  The state court's decision to deny plaintiff relief, even if the polygraph evidence had been before the state court, was not contrary to, or an unreasonable application, of clearly established federal law.

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.     Testimony from Jurors at Harley's Penalty Phase

Petitioner also relies on the testimony of three jurors who voted to convict him—Elise Saito, Glennette Lawrence, and Peggy Millar—all of whom testified at the evidentiary hearing in the Superior Court that if they had heard Harley's testimony from the sentencing hearing during the guilt phase of the trial, they would not have voted to convict Kolacki. RT Habeas at 27–49.  The jurors also testified that if they had heard tape 9 at trial, they would not have voted to convict Kolacki. Id.        As respondent points out, this testimony is irrelevant to the question of actual innocence.  The issue here revolves around whether newly discovered evidence bears on the constitutionality of petitioner's conviction.  The testimony of two jurors does not affect the significance of other purported newly discovered evidence.  The mere existence of new evidence relevant to the guilt of a state prisoner is not grounds for federal habeas relief.  Herrera, 506 U.S. at 400.  When newly discovered evidence bears on the constitutionality of an applicant's conviction and would probably produce an acquittal, such evidence may be the grounds for such relief.  Swan v. Peterson, 6 F.3d 1373, 1384 (9th Cir. 1993); see also Spivey v. Rocha, 194 F.3d 971, 979 (9th Cir. 1999) (affirming the district court's denial of petition for relief because "the totality of the new evidence does not undermine the structure of the prosecution's case").  Because the testimony of the two jurors' subjective responses to purportedly new evidence does not bear on the constitutionality of petitioner's conviction, relief is not warranted.  As a result, the testimony from jurors present at Harley's penalty phase, by itself or in conjunction with the other evidence offered by Kolacki, fails to make the required showing of probable innocence.

To be entitled to relief, petitioner must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is probably innocent.  See Carriger, 132 F.3d at 476; Jackson, 211 F.3d at 1165.  Kolacki has failed to meet this burden.  As a result, Kolacki's purported free-standing claim of actual innocence must fail.  In sum, the Superior Court's finding that this asserted new evidence was not a basis for relief was not contrary to clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

.

II.     Exclusion of Tape 9

Due process does not guarantee a defendant the right to present all relevant evidence. Montana v. Egelhoff, 518 U.S. 37, 42 (1996). The Constitution does, however, "prohibit[] the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote," Holmes v. South Carolina, 126 S. Ct. 1727, 1731 (2006), and "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 1732; see Egelhoff, 518 U.S. at 42 (holding that the exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.").

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: 1) the probative value of the excluded evidence on the central issue; 2) its reliability; 3) whether it is capable of evaluation by the trier of fact; 4) whether it is the sole evidence on the issue or merely cumulative; and 5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000). The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006; Miller v. Stagner, 757 F.2d 988, 995 (9th Cir. 1985). The due process and Sixth Amendment limitations on the exclusion of critical corroborative defense evidence are clearly established federal law under AEDPA. See Chia, 360 F.3d at 1003; DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001).

In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension and that it was not harmless under Brecht, 507 U.S. 619 (1993). The petitioner would have to show that the error had "'a substantial and injurious effect' on the verdict.'" Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

Petitioner contends that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by excluding tape 9 from trial. Petitioner asserts that the exclusion of tape 9 from his trial prevented the jury from hearing evidence which directly affected the credibility of his confession and had a substantially injurious effect on the jury's verdict. Respondent argues that the state court's determination that the exclusion of tape 9 was harmless error was not an unreasonable application of federal law.

Petitioner argues that de novo review is appropriate for this claim because the state appellate court refused to reach the merits of the claim. Section 2254(d) applies to "any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Summary denials are deemed merits adjudications, even if they do not explicitly analyze or cite to federal law. Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002), amended 311 F.3d 928 (9th Cir. 2002). While petitioner is correct that the state appellate court found this claim to be moot in light of its determination that tapes 10 and 11 were improperly admitted at trial, this claim was properly and adequately reviewed by the Superior Court in petitioner's state habeas petition. Therefore, section 2254 deference is afforded this claim as it is with petitioner's other claims.

The Superior Court found that tape 9 "reveals a classic paradigm of a police interview in which the suspect initially denies involvement, but later gradually elects to confess when confronted with the evidence against him," Amended Petition, Exhibit F at 5, and although tape 9 contained statements indicating that petitioner may have been under the influence of drugs and alcohol at the time of the interview, petitioner sounded "sober and lucent [sic] during the entire interrogation." Id. Moreover, the court determined that even if a jury would have determined that the confession was unreliable, Harley still had told petitioner he was collecting a debt from an illegal transaction and therefore, the error was harmless.

This court has listened to the entire interview—tapes 9, 10, and 11—and agrees with the Superior Court that tape 9 lacks the exculpatory evidence petitioner asserts it contains. As pointed out by respondents, petitioner repeatedly makes statements in tape 9 which he gradually modifies until the final statement fails to reflect the original statement he made. For example, Kolacki originally told police questioners that he had not been in Alviso the day Harley shot Amireh, but

15

1 after further questioning, Kolacki eventually admitted that he had driven Harley to Alviso. Taken as
2 a whole — and it would be misleading to a jury to merely use excerpts — the statement does not
3 qualify as exculpatory. This court also agrees with the Superior Court that petitioner sounded "sober
4 and lucent [sic]" throughout the interrogation, despite his many inconsistent statements. Most
5 importantly, however, the Superior Court's determination was not contrary to clearly established
6 federal law, nor was it based on an unreasonable determination of the facts in light of the evidence
7 presented in the state court proceeding.

III.    Denial of Severance

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997); Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir. 1986). It also may result in the deprivation of the specific constitutional guarantee of the right of confrontation. Id.
A federal court reviewing a state conviction under 28 U.S.C. section 2254 does not concern itself with state law governing severance or joinder in state trials. Grisby, 130 F.3d at 370. Nor is it concerned with the procedural right to severance afforded in federal trials. Id. Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. Id. In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000).

A petitioner seeking relief based on "a district court's denial of a motion to sever must establish that the prejudice he suffered from the joint trial was so 'clear, manifest or undue' that he was denied a fair trial." United States v. Throckmorton, 87 F.3d 1069, 1071–72 (9th Cir. 1996) (citing United States v. Vasquez-Velasco, 15 F.3d 833, 846 (9th Cir.1994)); United States v. Angwin, 271 F.3d 786 (9th Cir. 2001) (defenses of duress and ignorance were not antagonistic so as to require severance).

Petitioner argues that the trial court's decision to exclude tape 9 violated petitioner's due process rights and that section 2254(d) does not bar relief because the state court ignored basic facts about tape 9. Petitioner asserts in his memorandum that the court ignored the fact that experienced detectives coaxed the inexperienced, confused petitioner—who was under the influence of drugs and alcohol—to give a different version of events.

The Superior Court determined that the trial court's failure to sever the trials—much like the exclusion of tape 9—was harmless beyond a reasonable doubt. As pointed out by respondent, petitioner's arguments regarding the exclusion of tape 9 and severance merely boil down to the opposite faces of the same coin. Petitioner wanted a separate trial for the purpose of introducing tape 9. Therefore, for all the reasons noted in the previous section, the Superior Court's determination was not contrary to clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

IV.     Voluntariness and Coercion

Finally, petitioner argues that his confession was involuntary and coerced, and therefore the tapes—9, 10, and 11—should have been excluded. Petitioner argues that he was under the influence of drugs and alcohol at the time of the interview, making his confession involuntary, and that the interrogating officers implied a promise of leniency or benefit, making his confession coerced.

Petitioner again incorrectly argues that de novo review is appropriate in this situation. However, as before, the state trial court and Superior Court on habeas review both properly and adequately adjudicated this claim. Therefore, section 2254 deference is afforded this claim.

Involuntary confessions in state criminal cases are inadmissible under the Fourteenth Amendment. Blackburn v. Alabama, 361 U.S. 199, 205-07 (1960). The voluntariness of a confession is evaluated by reviewing both the police conduct in extracting the statements and the effect of that conduct on the suspect. See Miller v. Fenton, 474 U.S. 104, 110–12(1985). Absent police misconduct causally related to the confession, there is no basis for concluding that a confession was involuntary in violation of the Fourteenth Amendment. Colorado v. Connelly,

17

479 U.S. 157, 167 (1986). The court must consider the effect that the totality of the circumstances had upon the will of the defendant. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988) (citing Haynes v. Washington, 373 U.S. 503, 513-14 (1963)).

A statement is involuntary if extracted by any sort of threats or violence, or obtained by any direct or implied promise or by the exertion of any improper influence. Hutto v. Ross, 429 U.S. 28, 30 (1976). But this does not mean every statement made in response to a promise made by law enforcement personnel is inadmissible; rather, the "promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances." Leon Guerrero, 847 F.2d at 1366. For example, a promise to inform the prosecutor about a suspect's cooperation—even if accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect—does not render the suspect's subsequent statements involuntary. See id.

Here, the state court's application of federal law to petitioner's arguments regarding coercion was not unreasonable. Petitioner cites to the following passages as evidence of the coercive nature of the officer's statements.

> Zarate:   Rich . . . you wanna be in it? In the middle of this thing?
> Kolacki:  No, I don't. No, I don't.
> Zarate:   The you better tell us everything you know, buddy.
> Kolacki:  Okay, Okay.
> Zarate:   Because you're gonna go down.
> Kolacki:  I'll tell you everything you know [sic]. I'll tell you everything you know [sic].
> Ouimet:   Let's try it once from the start for the first time.

Transcript of tape 9 at 53.

> Ouimet:   You know what I think, and it's gonna be a lot worse for you. It's already gonna be bad, but it's not gonna be as bad, I don't think. But listen. If you continue to lie for, lie, it's gonna even look worse. Tell us what happened.
> Zarate:   You're gonna go down right with him, if you don't tell us the truth.

Id. at 55–56. And again later, the officers reiterated this sentiment:

18

| | | |
|---|---|---|
| Ouimet: | | Let me tell you this: You're not the guy that did the shooting. We know that. We know that he did the shooting. We already knew that before we even brought you in. |
| Kolacki: | | Right. |
| Ouimet: | | Okay? We've been over to jail and we've already talked to him. |
| Kolacki | | Right. |
| Ouimet: | | Okay? He's laid out the entire thing for us. |
| Kolacki | | Okay. |
| Ouimet: | | From start to finish. There's no sense lyin' about it. |
| Kolacki: | | Okay. |
| Ouimet: | | You knew he was gonna do the robbery. You didn't know he was gonna kill the guy, though. Buy you knew he was gonna do the robbery. |
| Kolacki: | | Right. |
| Ouimet: | | Didn't you? |
| Kolacki: | | I didn't know he was gonna do a robbery, sir. I didn't. |
| Ouimet: | | Well, that's – |
| Zarate: | | No. No. That's not how it happened. |
| Ouimet: | | Well, I'd believe you if you said you knew he wasn't gonna shoot the guy. |
| Kolacki: | | Okay. |
| Ouimet: | | I'll believe that. |

Id. at 57.

Contrary to petitioner's argument, the officers did not tell Kolacki the only acceptable answer was that he did not know that Harley was going to kill. As the passages cited by petitioner show, the police officers did not threaten petitioner, nor did they exert any improper influence. The officers did not even imply a promise of leniency. The officers did use normal interrogation tactics in order to persuade Kolacki to tell the truth, including statements indicating that cooperation and honesty would have a positive effect. Such statements are permissible under Leon Guerrero, 847 F.2d at 1366. When these statements are considered in the context of the entire interview, the police offers were engaging in a normal police interrogation. The state courts' decision regarding this claim—that the confession was voluntary and not coerced—was not contrary to clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The same standards for voluntariness apply to intoxication as to coercion. If a confession is the product of a rational intellect and a free will, then it is voluntary whether the confession is a product of physical intimidation, psychological pressure, or intoxication. Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir. 1989) (finding that although petitioner was intoxicated at the time he

gave police a statement, the statement was voluntary because statement was product of rational mind and petitioner's free will).

Here, there is equivocal evidence in the record regarding Kolacki's level of intoxication during the police interview. First, Kolacki denied being intoxicated when questioned by the officers. Answer, Exhibit 19 at 54–55. Then, Kolacki admitted to having done a line of methamphetamine, smoked a joint, and drank alcohol six or seven hours prior to the interview.[1]  Id. The Superior Court found that Kolacki sounded sober and coherent throughout the entire interview.[2] Amended Petition, Exhibit F at 5. Putting aside this equivocal evidence, there is no evidence in the record that establishes that Kolacki was intoxicated at the time the officers interviewed him, let alone that he was so intoxicated that his confession was not a product of a rational mind.

Furthermore, this court has listened to the tapes of the interview and concurs with the decision of the Superior Court. Petitioner was sober and lucid during the entire interview. In fact, petitioner seemed entirely cognizant of his changing story throughout the interview. Therefore, the state court's decision regarding this claim was not contrary to clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.

IT IS SO ORDERED.

DATED: July 8, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California